UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CORY JENKINS** | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 14-2499 |
| | * | |
| **BRISTOL-MYERS SQUIBB, and OTSUKA AMERICA PHARMACEUTICAL INC.** | * | SECTION "L" (4) |

## ORDER & REASONS

Before the Court is Plaintiff Cory Jenkins' Motion for New Trial. R. Doc. 81-1. Defendants Bristol-Myers Squibb Company and Otsuka American Pharmaceutical Inc. oppose the motion. R. Doc. 84. Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

### I. BACKGROUND

Plaintiff Cory Jenkins brought this products liability case alleging injures caused by the ingestion of the drug Abilify. Jenkins filed this case on October 17, 2014 in the 24th Judicial District Court for the Parish of Jefferson, Louisiana. R 1-1 at 1. Defendant Bristol-Myers Squibb Company removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. R. 1 at 1. Jenkins' Petition alleges that he had been prescribed Abilify to treat Bipolar II Disorder, and on or about October 19, 2010, Jenkins began to take this medication. R. 1-1 at 3. As a result of taking Abilify, Jenkins alleges he developed tardive dyskinesia in 2013. R. 1-1 at 3. Tardive dyskinesia is a neurological disorder that causes "irregular, involuntary muscular movement [and] can affect the limbs, upper extremities, lower extremities, trunk, [and] facial muscles." R. at 65-2. Jenkins contends that "[a]t the present time, [he] has chronic and continued restlessness and twitching of the upper and lower extremities, facial tics, jaw clenching and clucking, and

1

constant eye blinking." R. 1-1 at 3.

Jenkins asserts two separate theories of liability under the Louisiana Products Liability Act ("LPLA"): defective design and failure-to-warn. For Jenkins' defective design claim, Jenkins alleges that "the manufacture and marketing of Abilify was unreasonably dangerous in design with the high likelihood that the anticipated use and ingestion of Abilify would cause Tardive Dyskinesia in users such as Jenkins, Cory Jenkins" and that "[t]he defendants failed to consider an alternative 'design' of said medication that would not cause Tardive Dyskinesia." R. 1-1 at 4. Jenkins claims that Defendants failed to adequately warn of the risks associated with Abilify because Defendants failed to properly warn and failed to "outline the appropriate procedures and period testing, including administering the AIMS (Abnormal Involuntary Movement Scale) test, which would alert health care providers as to the development of Tardive Dyskinesia . . . ." R. 1-1 at 5.

According to the uncontested facts, Jenkins was first prescribed Abilify in 2010 to treat his bipolar disorder. R. 65-1 at 7. Jenkins then began taking Abilify, and found the drug helpful in stabilizing his symptoms. R. 65-2 at 4–5. Jenkins has been in the care of Dr. Dean Hickman since 2011. Dr. Hickman testified at deposition that tardive dyskinesia is "absolutely" one of the risks he would discuss with a patient when prescribing an atypical antipsychotic such as Abilify. R. 65-2 at 6.

Jenkins began to experience symptoms of a movement disorder in fall 2012. R. 65-2 at 6–7. Mr. and Mrs. Jenkins initially attributed his "fidgeting" to anxiety. In addition to bipolar disorder, Jenkins also had problems with the overconsumption of alcohol. R. 65-8 at 94–95. Following an alcohol-related incident, Jenkins scheduled an appointment for January 18, 2013, with Oschner Hospital's Addiction Behavioral Unit. R. 65-8 at 94–95. The Addiction Behavioral

Unit is Ochsner Medical Center's intensive outpatient addiction rehabilitation program. R. 65-8 at 94. Dr. Hickman examined Jenkins at the January 18, 2013 appointment. R. 65-2 at 7–8. Dr. Hickman's evaluation notes state: "I have personally seen and evaluated the patient, and reviewed the above history and exam. . . . Pt has marked fidgetiness of his hands which has worsened since preHalloween 2012. Dsicussed [sic] risks of meds such as abilify with tardive dyskinesia." R. 65-2 at 8. At deposition, Dr. Hickman testified that on January 18, 2013, he "[told] Jenkins that [he] w[as] concerned that [Jenkins] may have tardive dyskinesia" and that he was concerned that that [sic] tardive dyskinesia might be caused by him taking Abilify." R. 65-2 at 8. Nevertheless, Dr. Hickman continued to prescribe Abilify to Jenkins in the wake of the January evaluation. R. 65-2 at 8. At his deposition, Jenkins asserted that Dr. Jenkins suggested at the January 18, 2013, examination that the symptoms of a movement disorder may have been attributable to alcohol withdrawal. R. 65-7 at 40.

On April 10, 2013, Dr. Hickman examined Jenkins once again. R. 65-7 at 47. According to Dr. Hickman, Jenkins was displaying heightened symptoms of a movement disorder, such as facial twitching. Dr. Hickman's notes state that Jenkins "has now again developed significant restlessness of both [upper extremities] and [lower extremities] at rest. . . . It is constant hand wringing and toe tapping but now has a new facial component over last several weeks including jaw clenching, minimal lip/tongue involvement." R. 65-11 at 193. Dr. Hickman discontinued Jenkins' Abilify prescription on this same date, namely April 10, 2013. R. 65-1 at 11.

Dr. Hickman and Jenkins dispute what was discussed at the April 10, 2013, session. Dr. Hickman's examination notes state that Jenkins was "instructed that he could have Tardive Dyskinesia." R. 65-1 at 10. Dr. Hickman also wrote that he "addressed . . . complications of meds such as potential of TD [tardive dyskinesia]" with Jenkins. R. 65-1 at 10. At deposition,

3

Dr. Hickman testified that he told Jenkins that Jenkins may have tardive dyskinesia. R. 65-1 at 10. According to Dr. Hickman, he explained to Jenkins that he was taking Jenkins off of Abilify and referring him to a neurologist due to his concern that Jenkins may have developed tardive dyskinesia. R. 65-1 at 10.

Jenkins expresses uncertainty as to whether Dr. Hickman told him on April 10, 2013, that the use of Abilify may have caused the onset of tardive dyskinesia. Dr. Hickman's notes of April 10, 2013 state that he told Jenkins that the movement issues he was experiencing could possibly be caused by a medication. R. 65-1 at 11. When shown Dr. Hickman's examination note reporting that tardive dyskinesia was discussed at the April 10, 2013, examination, Jenkins stated that,

> Well, I mean, if it says it in the notes, then he may have said it to me. But, like I said, I don't recall him saying to me . . . . But, again, if I was – I don't know. If I heard those words, tardive dyskinesia, I would have come home and told my wife they think I have tardive dyskinesia. And maybe it was said and I just wasn't worried about it at that point because maybe I thought, hey, they'll take me off Ability and everything will be fixed.

R. 65-7 at 47.

At the April 10, 2013, examination, Dr. Hickman informed Jenkins that he would schedule Jenkins a follow-up appointment in May 2013 with a neurologist, Dr. Houghton, R. 65-1 at 11, and the appointment was made. Jenkins, however, canceled the appointment with Dr. Houghton because the symptoms of the movement disorder abated once he was taken off of Abilify. R. 65-1 at 11. Jenkins stated at deposition that "the whole reason behind me going to see a neurologist was so that I could get a significant or definite diagnosis," and that in May 2013, Jenkins "cancel[led] the neurology appointment because obviously I was off Ability and that's what was causing [the movements in my face] and I was fine at that point." R. 65-1 at 12.

4

However, by August 2013, Jenkins' symptoms had returned. R. 65-1 at 13. Jenkins admitted at deposition that in August of 2013 he "knew something was definitely wrong." R. 65-1 at 13. Jenkins therefore made another appointment to see the neurologist, Dr. Houghton. On October 18, 2013, Dr. Houghton diagnosed Jenkins with tardive dyskinesia. On October 17, 2014, Jenkins filed the instant lawsuit alleging that Abilify caused his tardive dyskinesia.

On July 8, 2016, this Court granted Defendants' motion for summary judgment on prescription grounds. R. 77. In its Order, the Court explained that Jenkins' tardive dyskinesia had manifested with sufficient certainty to support a cause of action in April 2013. Tremors, fidgeting, and jaw clenching are cognizable injuries that can support a cause of action. These injuries were sufficiently manifest in April 2013 to trigger prescription. Thus, Jenkins had until April 2014 to file a timely suit. However, because Jenkins did not file a suit until October 2015, his claims were time barred, and this Court dismissed his claims with prejudice.

## II. PRESENT MOTION

### A. Plaintiff's Motion for New Trial (R. 81-1)

Jenkins argues he is entitled to a new trial, because this Court's Order dismissing his claims on prescription grounds was against the weight of the evidence, and was a miscarriage of justice. R. 81-1 at 1. In the alternative, Jenkins requests additional time to complete discovery before the Court rules on the prescription issue. R. 81-1 at 2. Jenkins contends that in granting summary judgment, the Court failed to consider the evidence in the light most favorable to Plaintiff, as required in a motion for summary judgment. R. 81-1 at 2. According to Jenkins, if the Court had properly applied the summary judgment standard it would have denied the motion as improper or premature. R. 81-1 at 2.

Plaintiff contends that prescription must be determined based on his knowledge—

specifically whether Jenkins learned of the connection between his condition and Defendants' product. R. 81-1 at 3. Jenkins avers that he did not learn Defendants' drug, Abilify, was *"the most likely cause of his movement issues"* until October 2013, and therefore prescription could not have begun to run until that date. R. 81-1 at 3. Further, Jenkins argues that his April 2013 appointment with Dr. Hickman could not have triggered the prescriptive period, because this was a routine check-up and Plaintiff had not specifically scheduled the appointment to investigate the cause of his movement issues. R. 81-1 at 4. However, Plaintiff admits that at this appointment Dr. Hickman informed him that either Abilify or Cymbalta was causing his movement issues which was likely tardive dyskinesia. R. 81-1 at 5.

Instead, Jenkins argues he did not learn of the connection between his tardive dyskinesia and Abilify until at least October 2013, when he went to see a neurologist after his symptoms increased dramatically. R. 81-1 at 8. Until this examination, Jenkins argues that both he and Dr. Hickman were unsure of what was causing his tardive dyskinesia, and believed it could have been anxiety, alcohol withdrawal, medication, or a combination of factors. R. 81-1 at 10. Further, Jenkins avers that April 2014 was "the first indication in a medical record" that he had tardive dyskinesia caused by Abilify. R. 81-1 at 13. Thus, Plaintiff contends he did not know Abilify caused his tardive dyskinesia until either October 2013 or April 2014, and therefore his October 2014 suit is timely.

### B. Defendants' Opposition (R. 84)

Defendants oppose the motion. R. 84. Defendants argue that Jenkins applies the wrong standard for a motion to reconsider under Rule 59(e), and he cannot establish any of the four requirements for reconsideration under that rule. Thus, Defendants contend that reconsideration is not warranted, and any additional discovery is untimely. First, Defendants re-frame Jenkins'

6

motion as a Motion for Reconsideration under Rule 59(e). R. 84 at 1. As such, they contend Jenkins must demonstrate (1) a manifest error of law or fact, (2) newly discovered or previously unavailable evidence, (3) manifest injustice, or (4) an intervening change in controlling law. R. 84 at 1. Defendants argue that Jenkins cannot meet any of these standards.

According to Defendants, Dr. Hickman told Jenkins he might have tardive dyskinesia caused by Abilify in January 2013. R. 84 at 1. Then again in April 2013, Dr. Hickman explained he was concerned Jenkins had tardive dyskinesia and should stop taking Abilify. R. 84 at 1. Finally, Defendants emphasize that Jenkins' May 2013 statement that he cancelled his neurology appointment because "I was off Abilify and that's what was causing [the movements in my face," demonstrates he knew Abilify was the cause of his facial movement issues more than a year before this suit was filed. R. 84 at 2.

Analyzing the factors under Rule 59(e), Defendants contend that Jenkins has not presented any newly discovered or previously unavailable evidence, or any intervening changes in the controlling law. R. 84 at 4. Further, Defendants aver that while Jenkins disagrees with the Court's analysis and factual findings, there is no evidence of manifest injustice or errors of law or fact to warrant reconsideration. R. 84 at 4. In particular, Defendants argue there is substantial evidence to support the Court's finding that Jenkins knew about the connection between Abilify and tardive dyskinesia prior to October 2013. See R. 84 at 6-8. Further, Defendants aver that Louisiana law does not require a plaintiff to rule out all other possible causes of an injury before the prescriptive period begins to run. R. 84 at 8 (citing *Gaddy v. Caddo Par. Sch. Bd.*, No. 36,583 (La. App. 3d 12/11/08), 833 So. 2d 1092).

Additionally, Defendants argue that Plaintiff's claim that the Court applied the incorrect standard for summary judgment is without merit. R. 84 at 9. First, Defendants aver that the

Plaintiff, his wife, and Dr. Hickman all testified that Jenkins knew Abilify was causing his movement issues more than a year before he filed this lawsuit. R. 84 at 9. Second, Defendants contend that while the Court must view the evidence in the light most favorable to the non-movant, "it may not ignore uncontroverted evidence." R. 84 at 9 (quoting *Jackson v. Gearbulk, Inc.*, 761 F. Supp. 2d 411, 422 (W.D. La. 2011)). Thus, Defendants aver the Court correctly applied the law to the facts of this case in granting summary judgment in this matter.

Finally, Defendants aver that further discovery in this matter "is untimely, waived and meritless." R. 84 at 10. According to Defendants, because Jenkins did not request additional discovery in his opposition to the summary judgment motion, he has waived this opportunity. R. 84 at 10. Also, Defendants argue that Jenkins has failed to demonstrate why he was previously unable to obtain evidence to support his opposition. R. 84. at 10. Defendants contend that even if such a request was timely, Plaintiff's requested information is irrelevant, as the two doctors he seeks to depose did not evaluate Jenkins until October 2013, and therefore would have no information about what Plaintiff knew prior to that date. R. 84 at 10.

### C. Plaintiff's Reply (R. 87)

Plaintiff replies with leave of Court, and argues that the unique facts of this case distinguish it from the cases Defendants cite in their opposition. R. 87 at 1. Plaintiff restates his position that "when all the evidence is considered under the light most favorable to plaintiff . . . and the proper legal standard is applied," the Court will find the claim has not prescribed. R. 84 at 2. Plaintiff contends that the same outcome should result under either Rule 59(a) or 59(e). R. 84 at 2. Plaintiff reiterates that Dr. Hickman believed the tardive dyskinesia was caused by Abilify, Cymbalta, or anxiety in May 2013; thus prescription could not have begun to run on that date. R. 84 at 3.

According to Plaintiff, Jenkins' "multiple sources of symptoms presents a unique factual situation precluding summary judgment at this point." R. 87 at 4. While Defendants argue a plaintiff does not have to rule out all the possible causes of his injury to trigger prescription, Plaintiff contends that the cases establishing this authority did not involve multiple sources of symptoms, and are therefore inapplicable here. R. 87 at 4. According to Plaintiff, he may have known something was wrong, but did not know exactly which of the possible sources was causing his tardive dyskinesia. R. 87 at 5. Instead, Plaintiff argues that he did not know Abilify was the cause until April 2013. Thus, the prescriptive period could not have started until this date, and his October 2014 suit was timely. R. 87 at 6.

### III. LAW & ANALYSIS

#### A. Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). However, when a movant seeks review of a judgment, such as in the present case, courts treat a motion for reconsideration as either a Rule 59(e) motion to alter or amend judgment, or as a Rule 60(b) motion for relief from a judgment or order. *Lavespere v. Niagara Mach. & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). The motion is considered a Rule 59(e) motion if filed no later than 28 days from the entry of a judgment, and a Rule 60(b) motion if filed after this time period. See Fed. R. Civ. P. 59(e). Here, Defendant filed its Motion within 28 days of entry of the Court's Order & Reasons; thus, the Motion is treated as a Rule 59(e) motion to alter or amend judgment.[1] A Rule 59(e) motion serves the narrow purpose of correcting manifest

---

[1] Plaintiff filed a Motion seeking Leave to File a Motion for New Trial 28 days after the Court's Order granting the Defendant's Motion for Summary Judgment. The Court granted the Motion for Leave three days later. However, because leave was requested on the 28th day, the Court will view the Motion as a Motion for Reconsideration under Rule 59(e).

9

errors of law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 1667, 1674 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.* (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000)). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

The Court finds that Plaintiff has not demonstrated he is entitled to the "extraordinary" remedy of reconsideration. To prevail on his motion, Jenkins must demonstrate a manifest error of law or fact, an intervening change in the controlling law, introduce previously unavailable evidence, or show that reconsideration is necessary to prevent injustice. *Harcon Barge Co., Inc v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 667 (5th Cir. 1986), *cert. denied*, 479 U.S. 930 (1986). Here, Plaintiff has not presented previously unavailable evidence, or demonstrated a change in controlling law. While Plaintiff argues the Court's Order granting summary judgment was a miscarriage of justice, the evidence does not support such a conclusion.

As the Court explained in its previous Order, Jenkins had sufficient knowledge of his condition, tardive dyskinesia, and its potential cause, Abilify, in April 2013. Dr. Hickman informed Plaintiff that he believed Plaintiff had tardive dyskinesia, and should stop taking Abilify at that time. Furthermore, in May 2013, Jenkins cancelled his appointment with a neurologist because "obviously I was off Abilify and that's what was causing [the facial movement issues]." R. 65-8 at 114. This statement alone indicates the Plaintiff knew Abilify was the cause of his injuries more than a year before this suit was filed. The evidence demonstrates that Jenkins' prescriptive period began to run in either April or May 2013. This suit was filed

10

October 17, 2014, outside the one year prescriptive period for the claim. All of the evidence in the record indicates that the Plaintiff was told multiple times prior to October 2013 that Abilify caused his facial movement issues. The Court is unpersuaded that any additional discovery at this late stage in the litigation would change this conclusion. Therefore, the Court's Order granting summary judgment was not based on a manifest error of law or fact, nor is reconsideration necessary to prevent injustice.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for New Trial/Reconsideration, R. 81, is hereby **DENIED**.

New Orleans, Louisiana, this 3rd day of October, 2016.

_____
UNITED STATES DISTRICT COURT JUDGE